<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| UNITED STATES, | : | |
| Plaintiff, | : | Civ. No. 95-4596 (GEB) |
| v. | : | |
| HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES INTERNATIONAL UNION, *et al.* | : | **MEMORANDUM OPINION** |
| Defendants. | : | |

This matter comes before the Court upon motion by petitioner UNITE HERE ("Petitioner" or "UNITE HERE") for an Order to Show Cause and Verified Petition seeking an order to enforce the Consent Decree and Final Orders against respondents Bruce S. Raynor, John Gillis, Edgar Romney, Wilfredo Larancuent, Katie Gerken, Harold Bock, Harris Raynor, Noel Beasley, Christina Vasquez, Christine Kerber, Lynne Fox, David Melman, Gary Bonadonna, Jean Hervey, Victor Velez, and William Towne (collectively, the "Individual Respondents"), the New York New Jersey Regional Joint Board, the New York Metropolitan Area Joint Board, the Laundry Dry Cleaning and Allied Workers Joint Board, the Rocky Mountain Joint Board, the Mid-Atlantic Regional Joint Board, the Southern Regional Joint Board, the Chicago and Midwest Regional Joint Board, the Western States Regional Joint Board, the Metropolitan Distribution and Trucking Joint Board, the Philadelphia Joint Board, the Pennsylvania Joint Board, the Rochester Regional Joint Board, the Southwest Regional Joint Board, and the Puerto Rico Joint Board (collectively, the "Joint Board Respondents"), and Local 169 of UNITE HERE ("Local 169" and together, with the

Individual Respondents, the Joint Board Respondents, the "Respondents") [Docket No. 130, 131]. The Court, having heard oral arguments on March 4, 2009 and having reviewed the parties' submissions, and for the reasons discussed below, will deny Petitioner's motion and petition.

## I.     BACKGROUND

### A.     The Consent Decree and Final Order

This case originated with a complaint filed by the United States, which alleged that organized crime groups had dominated the Hotel Employees and Restaurant Employees International Union ("HEREIU") for twenty-five years, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq. (Compl. [Docket No. 1]). On September 5, 1995, this Court executed a consent decree in this matter ("Consent Decree"), which provided that its "remedial objective . . . is that the HEREIU and its constituent entities be free from the direct or indirect influence of any organized crime group or the threat of such influence now and in the future." (Consent Decree, ¶ 3 [Docket No. 3]).

The Consent Decree also requires that "[a]ll officers and other persons holding positions of trust in the HEREIU and its constituent entities, with due regard to the remedial objective of this action, have a heightened fiduciary duty to the membership in insuring the independence and the integrity of the union free from corruption and the influence of criminal groups as well as promoting democratic participation of union members in union affairs as guaranteed by the Labor Management Reporting and Disclosure Act (the "LMRDA")." *Id.* at ¶ 4. Further, Paragraph 5 of the Consent Decree permanently enjoins all current and future HEREIU officials and constituent entities are permanently enjoined, among other things:

>     (a) from committing any crime listed in 18 U.S.C. § 1961(1); . . . [and]

> (d) from obstructing or otherwise interfering, directly or indirectly, with the efforts of anyone effectuating or attempting to effectuate the terms of this Consent Decree or in attempting to prevent any criminal groups or barred person from exercising influence on the conduct of the affairs of the HEREIU and its constituent entities.

*Id.* at ¶ 5(a)(d). Finally, with respect to the Court's jurisdiction, the Consent Decree dictates that:

> The Court has exclusive jurisdiction over the subject matter herein and over the parties hereto. The Complaint states a cause of action under RICO. The Court shall retain jurisdiction over the parties and signatories to this Consent Decree and the subject matter of this litigation in order to implement the terms and provisions of this Consent Decree. If the Monitor, any party, or other person or entity files any separate action pursuant to the Consent Decree, such action shall be designated a related action pursuant to Rule 11D of the General Rules of this Court. The Court shall have exclusive jurisdiction to decide any and all issues and disputes arising from the interpretation or application of this Consent Decree until further order of this Court. The United States shall have the right to intervene in the event there is a dispute regarding any interpretation or application of the Consent Decree.

*Id.* at ¶ 1.

On December 1, 2000, the Court entered a Final Order of Dismissal ("Final Order"), terminating the Consent Decree but also ordering that current and future HEREIU officials were still bound by the duties and injunctions listed above. (Final Order, ¶¶ 2, 5-6 [Docket No. 97]). With respect to the Court's jurisdiction, the Final Order also provides that "[t]he Court shall retain exclusive jurisdiction over the parties of this Order and original Consent Decree in order to enforce and implement the terms and provisions of this Order and the original Consent Decree" and also provides that "[p]ursuant to the All Writs Act, 28 U.S.C. § 1651, all parties and non-parties to this action shall be and are hereby permanently restrained and enjoined from litigating any enforcement or interpretation of the 1995 Consent Decree, other Orders of the court and this Order in any jurisdiction except this Court." *Id.* at ¶¶ 1, 13.

3

**B.     UNITE HERE**

In July 2004, HEREIU merged with the Union of Needletrades and Industrial Textile Employees ("UNITE") to form the Petitioner UNITE HERE. (Ver. Pet., ¶ 7; Amended Final Order at 2). On the date of the merger, HEREIU's membership base consisted of 250,000 workers while UNITE represented less that 150,000 workers. (Ver. Pet., ¶¶ 12, 14). UNITE HERE's Constitution provides for two presidents: General President and President/Hospitality Industry. *Id.* at ¶ 18. Individual Respondent Bruce Raynor, the former president of UNITE, currently serves as General President, while John Wilhelm, the former president of HEREIU, is President/Hospitality Industry for the union. *Id.* The Presidents report to the General Executive Board ("GEB"), which is comprised of all of the democratically elected union officers. *Id.* at 19. Due to the sizes of HEREIU and UNITE prior to the merger, the majority of GEB members were formerly affiliated with HEREIU. *Id.* at ¶20.

Pursuant to the UNITE HERE Constitution and the Labor Management Reporting and Disclosure Act (the "LMRDA"), a convention to elect officers must be convened every five years. (*Id.* at ¶21 (citing UNITE HERE Const. Art. 2, Secs. 1, 2)). The UNITE HERE Constitution also provides for a democratic process through which members will elect delegates to the convention and for the voting for officers at the convention itself. (Ver. Pet., ¶ 21 (citing UNITE HERE Const. Art. 2, Secs. 3-19)). The next convention is scheduled for June 2009 and for the first time since the merger, there will be an election of Union officers. (*Id.* at ¶22).

Petitioner argues that the Mr. Raynor and the other Respondents, who include officers, members employees or affiliates of UNITE HERE, have "concluded that they cannot prevail at a democratically convened convention" and so have taken a series of actions to (1) improperly

secede from the Union; (2) illegally convert Union assets to their own purposes; and (3) "subvert the democratic processes, all in violation of the Consent Decree, statutory law and Union Constitution." (Vet. Pet., ¶ 23).

### 1. The New York Actions and Joint Board Secession Votes

In February, 2009, several Respondents filed two actions in the Southern District of New York, *Gillis v. Wilhelm*, No. 09-1116 and *Raynor v. Wilhelm*, No. 09-1374 (the "New York Actions"), against certain UNITE HERE Officers, including members of the GEB and Mr. Wilhelm. (Ver. Pet. at ¶ 28; *see also Gillis v. Wilhelm*, No. 09-1116 (S.D.N.Y. 2009), *Raynor v. Wilhelm*, No. 09-1374 (S.D.N.Y. 2009)).[1] In the New York Actions, the plaintiffs (Respondents in this case) sought declaratory and injunctive relief that certain provisions of the UNITE HERE Constitution that prohibit locals and joint boards from seceding without the GEB's consent are invalid and unenforceable. *Id.* at ¶ 28. Shortly after the New York actions were filed, four of the Joint Board Respondents scheduled secession votes for their local members to take place on March 6 and March 7, 2009. (Ver. Pet. at ¶ 35 (citing notices of special meetings called by the Rochester, Mid-Atlantic, Southern and Pennsylvania Regional Joint Boards, attached as Exh. C to Ver. Pet.)). Upon learning of the secession votes, Petitioner called a meeting of the GEB on February 26, 2009, at which time the GEB passed resolutions affirming that the UNITE HERE Constitution prohibited Joint Boards and their affiliated locals from seceding and resolving that it would revoke the charter of any affiliate that commenced a secession vote. (Ver. Pet., ¶ 38). In

---

[1] As the Court noted in *Inductotherm Indus. v. United States*, No. 99-2451, 2002 U.S. Dist. LEXIS 14046, at *6-7 (D.N.J. Mar. 27, 2002), "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Id.* (internal citations omitted).

light of these actions, plaintiffs in the New York Actions filed an order to show cause seeking, among other things, to enjoin the implementation of the GEB resolutions passed at its February 26, 2009 meeting.  (Transcript of Mar. 3, 2009 Hearing in *Gillis v. Wilhelm*, No.  09-1116 (S.D.N.Y. 2009), and *Raynor v. Wilhelm*, No. 09-1374 (S.D.N.Y. 2009) ("S.D.N.Y. Hrg. Tr."), 5:19-6:8).  Judge Daniels held a hearing with respect to that order to show cause on March 3, 2009, at which the parties agreed that the request for injunctive relief was withdrawn and the Petitioner in this case (and defendant in those cases) agreed not to revoke the charter of Joint Boards who proceed with their scheduled secession votes.  *Id.* at 5:24-6:8.

### 2. Conversion of Union Assets

Petitioner further alleges that Raynor and certain other Individual Respondents abused their positions as officers by converting and placing certain UNITE HERE assets outside the control of the union and under the personal control of Raynor and his associates. (Ver. Pet. ¶ 39). Specifically, Petitioner alleges Raynor used his position as General President of UNITE HERE to gain control of (1) Amalgamated Bank, which is owned by UNITE HERE and its affiliates, (2) the UNITE HERE Staff Retirement Fund and the UNITE HERE National Retirement Fund, and possibly (3) the ownership of the UNITE HERE office building, located at 275 Seventh Avenue in New York City (the "Building").  *Id.* at ¶¶ 41-46, 51-53, 54-57.

### C. Procedural History

On February 26, 2009, Petitioner filed the instant motion and Verified Petition seeking an order to show cause against Respondents, (1) declaring that Respondents' above mentioned actions are violating the permanent injunction set forth by the Prior Orders; (2) directing Respondents to cease and desist from such violations; and (3) imposing on Respondents such

punishment as the Court deems necessary and appropriate. (Pet.'s Br. at 1). On March 4, 2009, a hearing was held on the matter.[2]

## II.  ANALYSIS

### A.  Respondents' Actions Do Not Fall Within the Scope of the Consent Decree

Petitioner argues that an injunction is appropriate because Respondents' actions taken to secede from UNITE HERE violate the Consent Decree, Final Order and Amended Final Order. (Pet.'s Br. at 2). Specifically, Petitioner argues that "Respondents' ongoing attempts to secede from UNITE HERE and to affiliate with a non-UNITE HERE union directly contravene the mandate of the Prior Orders "[t]hat all officers and other persons holding positions of trust in [UNITE HERE] and its constituent entities . . . have a heightened fiduciary duty to the membership in insuring the independence and the integrity of the union . . . as well as promoting democratic participation of union members in union affairs as guaranteed by the [LMRDA]." (Pet.'s Br. at 3 (quoting Consent Decree, ¶ 4). Petitioner further argues that Respondents' attempts to convert Union assets have violated the injunction set forth in prior orders which "'permanently enjoin[s]' all current and future HEREIU officials and constituent entities:

    a.    from committing any crime listed in 18 U.S.C. § 1961(1);

    b.    from obstructing or otherwise interfering, directly or indirectly, with the efforts of anyone effectuating or attempting to effectuate

---

[2] On March 2, 2009, Petitioner had filed another motion for an order to show cause seeking a temporary restraining order enjoining and restraining Respondents from taking any steps to secede from UNITE HERE pending the resolution of Petitioner's instant motion. (Docket No. 132). Oral arguments were also held with respect to that motion on March 4, 2009 and on March 10, 2009, the Court issued an Order denying that motion. (Docket No. 137).

the terms of this Consent Decree.
(Pet.'s Br. at 2 (quoting Consent Decree, ¶ 5(a)(d)).  Petitioner argues that among the crimes listed under the RICO Act, or 18 U.S.C. § 1961(1), are those defined in Section 501(c) of the LMRDA, which establishes that agents and other representatives of a labor organization have a duty to hold the union's money and property for the sole benefit of the organization and its members and punishes any such person who embezzles, steals or unlawfully and willfully converts the assets of his or her union.  (Pet.'s Br. at 4-5 (quoting 29 U.S.C. § 501(a)(c))).  As such, Petitioner argues that Respondents' actions to shift control of the union's assets, including its interests in the Amalgamated Bank, the UNITE HERE Staff Retirement Fund and the UNITE HERE National Retirement Fund, and possibly the Building, constitute a violation of LMRDA, and in turn RICO and the Prior Orders.  (Pet.'s Br. at 7).  Petitioner further argues that this Court has jurisdiction over this matter because, under the Prior Orders, the Court has retained "exclusive jurisdiction to decide any and all issues and disputes arising from the interpretation or application of this Consent Decree."  *Id.* at 2 (citing Consent Decree, § 1; Final Order § 1; Amended Final Order § 1).

   Respondents counter that this Court does not have jurisdiction over Petitioner's allegations because they are beyond the purview of the Prior Orders.  (Transcript of March , 2009 Hearing ("March 4 Hrg. Tr."), 24:13-26:12).  Respondents also argue that the entry of an injunction is prohibited by the Norris-LaGuardia Act ("NLA"),  29 U.S.C. § 101 et seq. *Id.* at 26:13-22.  Respondents also compare the instant case to situations where parent unions seek the imposition of a trusteeship in order to prevent a disaffiliation vote from taking place and argue that courts have recognized that such actions are not a proper purpose under the LMRDA .  *Id.*. at

8

26:23-27:5.  Respondents also argue that granting Petitioner's motion would also be in contravention of the Wagner Act, 29 U.S.C. § 151.  *Id.* at 29:11-13.  Finally, Respondents also note that the scheduled secession votes do not threaten the consent decree because Respondents are willing to subject themselves to the obligations of the Consent Decree.  *Id.* at 26:7-23.

      The Court concludes that Petitioner's allegations fall outside of the scope of the Consent Decree.  As noted above, the remedial objective of the Consent Decree "is that the HEREIU and its constituent entities be free from the direct or indirect influence of any organized crime group or the threat of such influence now and in the future." (Consent Decree, ¶ 3).  Further, although Petitioner asserts that the Consent Decree imposes on Respondents a  "heightened fiduciary duty . . . [to] insur[e] the independence and the integrity of the union . . . as well as promot[e] democratic participation of union members in union affairs as guaranteed by the [LMRDA]," when read in context, it is clear that the Consent Decree imposes this heightened duty with respect to the remedial objective of the Consent Decree, namely the freeing of the union from corruption of organized crime groups. (Pet.'s Br. at 3 (quoting Consent Decree, ¶ 4).  As noted above, Paragraph 4 of the Consent Decree, when read in its entirety, states that

> [a]ll officers and other persons holding positions of trust in the HEREIU and its constituent entities, with due regard to the remedial objective of this action, have a heightened fiduciary duty to the membership in insuring the independence and the integrity of the union *free from corruption and the influence of criminal groups*  as well as promoting democratic participation of union members in union affairs as guaranteed by the Labor Management Reporting and Disclosure Act (the "LMRDA").

Consent Decree, ¶ 4 (emphasis added).  Thus it is clear that the goal of the Consent Decree and the duties it imposes upon Union officers are limited to protecting the Union from the influence and threat of organized crime groups.

None of Petitioner's allegations pertain to this remedial objective. Petitioner does not assert that any crime groups, organized or otherwise, are influencing the Union or threatening its members' democratic participation in union affairs. At oral argument, Petitioner's argue that Respondents themselves allege ongoing union corruption in the complaint filed in *Gillis v. Wilhelm* and that, because the Consent Decree discusses the promotion of democratic processes, part of the rationale behind the seeking of the Consent Decree was to ensure that Union members had a democratic voice and Union officers act with a heightened fiduciary responsibility. (March 4 Hrg. Tr., 12:9-13:8; 14:21-15:9). However, the United States, the party who had initially sought the Consent Decree, also stated at oral arguments that it believed that the Prior Orders do not reach the issue of violations of the Union Constitution or Union Governance. *Id.* at 10:3-6. Rather, the United States asserts that the Prior Orders are limited to the remedial objective of "ridding the union of organized crime and other criminal influences." *Id.* at 10:3-10. In light of the United States' position as well as the plain language of the Consent Decree, the Court concludes that Petitioner's allegations fall outside the scope of the Prior Orders. As such, the Court does not have jurisdiction over the matter.[3]

---

[3] Because the Court concludes that it does not have jurisdiction over Petitioner's claims, it does not reach Respondent's other arguments with respect to while Petitioner's request for injunctive relief is inappropriate as listed above.

### III. CONCLUSION

For the foregoing reasons, Petitioner's motion for an Order to Show Cause and Verified Petition seeking an order to enforce the Consent Decree and Final Orders (Docket Nos. 130, 131) are denied. An appropriate form of order is filed herewith.

Dated: March 23, 2009

   /s/ Garrett E. Brown Jr.   
GARRETT E. BROWN, JR., U.S.D.J.
